UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA C.,<br><br>         Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.: 18-cv-00790-AJB-MDD<br><br>**REPORT AND RECOMMENDATION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 21, 22]** |

  This Report and Recommendation is submitted to United States Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

  Plaintiff Laura C. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner"). (ECF No. 21 at 2).[1] The final administrative decision of the Commissioner denied

---

[1] All pincite page references refer to the automatically generated ECF page

1

Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Title II") and for Supplemental Security Income under Title XVI of the Social Security Act ("Title XVI"). (AR 115).[2]

For the reasons set forth herein, the Court recommends Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and Defendant's Cross-Motion for Summary Judgment is **DENIED**. Specifically, this Court **RECOMMENDS** that Plaintiff's request that the case be **REMANDED** for further proceedings is **GRANTED**.

## I. BACKGROUND

Plaintiff was born in 1957. (AR 246). At the time the instant application was filed on February 26, 2014, Plaintiff was 56 years-old which categorized her as a person of advanced age. 20 C.F.R. §§ 404.1563, 416.963.

### A. Procedural History

On February 26, 2014, Plaintiff protectively filed an application for a period of Disability Insurance Benefits under Title II. (AR 105). On January 3, 2017, Plaintiff filed an application for a period of Supplementary Security Income under Title XVI. (*Id.*). Both applications alleged a disability beginning February 12, 2014. (*Id.*). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*). An administrative hearing was held on January 18, 2017. (*Id.*). Plaintiff appeared and was represented by attorney Holly McMahon. (*Id.*). Testimony was taken from Plaintiff, impartial medical expert John R. Morse, M.D., and impartial

---

number, not the page number in the original document.
[2] "AR" refers to the Certified Administrative Record filed on September 7, 2018. (ECF No. 20).

vocational expert Gloria J. Lasoff. (*Id.*). On March 21, 2017, the ALJ issued a decision finding Plaintiff was not disabled from February 12, 2014 through the date of the decision and therefore denied Plaintiff's claim for benefits. (AR 115).

On May 8, 2017, Plaintiff sought review with the Appeals Council. (AR 354). On March 20, 2018, the Appeals Council denied Plaintiff's request for review and declared the ALJ's decision to be the Commissioner's final decision in Plaintiff's case. (AR 1). This timely civil action followed.

## II. DISCUSSION

### A. Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla but less than a preponderance." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Batson*, 359 F.3d at 1193. When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."

*Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusion, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Batson*, 359 F.3d at 1193. Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

### B. Summary of the ALJ's Findings

In rendering his decision, the ALJ followed the Commissioner's five step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since February 12, 2014. (AR 107).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, and deep vein thrombosis. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 109) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

Next, after considering the entire record, the ALJ determined that Plaintiff had the "residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," and announced the following residual functional capacity ("RFC"):

Perform light work as defined in 20 C.F.R. 404.1567(b) and

4

416.967(b) except the [Plaintiff] is limited to frequent climbing stairs and ramps, occasional climbing ladders/ropes/scaffolding, and frequent stooping, kneeling, crouching, and crawling; avoid concentrated exposure to hazards such as moving machinery and working at unprotected heights; and avoid concentrated exposure to extreme temperature and vibration. (AR 110).

The ALJ said that this RFC assessment was "consistent with the objective medical evidence and other evidence. . . ." (*Id.*). The ALJ stated he considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927. (*Id.*).

The ALJ then proceeded to step five of the sequential evaluation process. He found Plaintiff was able to perform her past relevant work. (AR 115). For the purposes of his step five evaluation, the ALJ accepted the testimony of the vocational expert ("VE"). (*Id.*). The VE testified that Plaintiff's past relevant work included the following jobs: medical clerk, administrative assistant, and office supervisor. (*Id.*).

### C. Issues in Dispute

The issues in dispute in this case are: 1) whether the ALJ erred by giving great weight to the opinion of Dr. Morse, M.D. (the testifying Medical Expert) in establishing Plaintiff's residual functional capacity over substantial weight given to the opinion of Dr. Crider, M.D. (examining consultative physician); and 2) whether the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's pain and limitation testimony. (ECF No. 21-1 at 6, 11).

### 1. The ALJ's decision to accept the opinion of the non-examining vs. the examining physician in establishing Plaintiff's RFC

"In making a determination of disability, the ALJ must develop the

record and interpret the medical evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Title 20 C.F.R. § 404.1546(c) of the Code of Federal Regulations states in pertinent part, "at the administrative law judge hearing level …, the administrative law judge … is responsible for assessing your residual functional capacity."

An individual's residual functional capacity (RFC) is "based on all the relevant medical and other evidence in the individual's case record." *Soc. Sec Ruling 16-3p (2016)*. RFC "is the most an individual can still do despite his or her impairment related limitations." (*Id*). When establishing an individual's RFC, the ALJ reviews the medical record submitted and the opinions of medical providers (e.g. physicians).

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the Plaintiff ("treating physicians"); (2) those who examine but do not treat the Plaintiff ("examining physicians"); and (3) those who neither examine nor treat the Plaintiff ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinions of a treating source than to that of a non-treating physician. *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit held:

> If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment

relationship' between the patient and the treating physician. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.

*Id.* at 631 (internal citations omitted).

Where a non-treating, non-examining physician's opinion contradicts the treating physician's opinion, the ALJ may only reject the treating physician's opinion "if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). "The ALJ may meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Morgan v. Apfel*, 169 F.3d 595, 600-601 (9th Cir. 1999) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989)).

Dr. Crider is an examining physician. After examining Plaintiff, Dr. Crider assessed an RFC to include the following:

> Plaintiff can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently. Standing and/or walking can be done up to 6 hours in a normal 8-hour workday but requires Plaintiff periodically alternate between sitting and standing. Plaintiff medically requires a hand-held assistive device for balance and support. Plaintiff can climb ramps and stairs without restriction. *Plaintiff can <u>never</u> climb ladders, ropes, or scaffolds. Plaintiff can <u>never</u> stoop, kneel, crouch, or crawl.* (AR 633-34) (emphasis added).

Dr. Morse is categorized as a non-examining physician. He was the testifying medical expert at Plaintiff's hearing, he neither examined nor treated Plaintiff. As the testifying medical expert, Dr. Morse opined that

7

based upon his review of the medical record, Plaintiff had the following RFC:

> Limited to lifting no more than 10 pounds on a frequent basis and 20 pounds occasionally; sit, stand, and walk no more than six hours per day; limited to frequently climbing ramps and stairs, and *limited to <u>occasionally</u> climbing of ladders/ropes/scaffolding*; <u>*frequently*</u> *stoop, kneel, crouch, and crawl*; avoid concentrated exposure to machinery or unprotected heights. (AR 240-41) (emphasis added).

Two other non-examining physicians also opined on Plaintiff's disability status, the State Agency consultants, Dr. S. Lee, M.D. and Dr. A. Wong, M.D. (AR 114). Dr. Lee determined that Plaintiff could lift up to 20 pounds occasionally and more than 10 pounds frequently, stand/walk for 6 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day, occasionally climb ramps and stairs, never climb ladders, ropes, scaffolding, and occasionally balance, stoop, kneel, crouch, crawl, avoid concentrated exposure to hazards such as moving machinery and working at unprotected heights; and avoid concentrated exposure to extreme temperatures and vibration. (*Id.*). Dr. Wong's report was similar to Dr. Lee's. They both gave substantial weight to Dr. Crider's findings, and found Plaintiff's postural limitations in line with his report. However, both physicians disagreed with Dr. Crider's opinion about Plaintiff's need for a cane to balance and ambulate. (AR 284, 302).

Ultimately, the ALJ gave great weight to the opinion of Dr. Morse; substantial weight to Dr. Crider's opinion; and substantial weight to the State Agency consultants, Drs. Lee and Wong. (AR 112, 114). The ALJ stated he gave less weight to Dr. Crider's opinion than to that of Dr. Morse's opinion, because Dr. Morse "had access to the entire medical record," was "an accepted medical source with a board certified specialty in internal medicine,"

8

and his "conclusions are consistent with the bulk of the evidence in the record." (AR 112-113). The ALJ gave the opinions of Drs. Lee and Wong substantial weight "because they are generally consistent with the record" although, the ALJ reiterated his decision to accord Dr. Morse's opinion with greater weight citing "he had access to the entire record and his opinion is better supported by that record." (*Id.*). The ALJ also accepted the opinion of Dr. Morse in concluding that "none of Plaintiff's impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

As noted herein, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Ryan v. Commissioner Soc. Sec.*, 528 F3d 1194, 1198 (9th Cir. 2008). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight … even if it does not meet the test for controlling weight." *Garrison v. Colvin*, 759 F3d 995, 1012 (9th Cir. 2014) (internal citations omitted). Further, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

Here, in the RFC determination, the ALJ made findings that conflict or appear to conflict with Dr. Crider's opinion. Adopting Dr. Morse's opinion, the ALJ found "[t]he physical symptoms and limitations reported by the [Plaintiff] are inconsistent with the medical evidence and the record as a whole, including objective clinical signs and laboratory findings, to the extent

9

they indicate a more restrictive residual functional capacity assessment" as determine by the ALJ. (AR 111-112). The ALJ cited to the testimony and findings of Dr. Morse to support his determination of Plaintiff's RFC. For example, the ALJ noted "at the hearing…Dr. Morse…testified he reviewed the medical evidence in the record and reported that "while the Plaintiff complained of chronic neck pain and chronic back pain, the orthopedic CE reported that a straight leg test was negative and found no neurological deficits." (AR 112). The ALJ then set out Dr. Morse's assessment of Plaintiff's RFC. (*Id.*). As noted herein, the ALJ essentially adopted Dr. Morse's assessment in full:

> Perform light work . . . except the [Plaintiff] is limited to frequent climbing stairs and ramps, <u>*occasional* climbing ladders/ropes/ scaffolding</u>, and <u>*frequent* stooping, kneeling, crouching, and crawling</u>; avoid concentrated exposure to hazards such as moving machinery and working at unprotected heights; and avoid concentrated exposure to extreme temperature and vibration. (AR 110) (emphasis added).

The ALJ's reliance on Dr. Morse's findings is misplaced. A review of Dr. Morse's testimony reveals inaccuracies that render the ALJ's decision not based upon the substantial evidence in the record. For example, one stated reason the ALJ gave Dr. Morse great weight was based on his "board certified specialty in internal medicine." (AR 112). A review of Dr. Morse's Vitae shows that he was board certified in internal medicine in 1970, however, his education and training was focused on cardiology. Specifically, he became board certified in cardiology in 1973, has been a fellow of the American Heart Association and American College of Cardiology from 1972 to the present. He was a research fellow, senior clinical fellow, department chief and chairman all in cardiology. (AR 783-84). Also, Dr. Morse has been published at least

six times all addressing cardiology issues. As such, this reason cited by the ALJ to give greater weight to Dr. Morse over Dr. Crider, a practicing Board Certified Orthopedic Surgeon, is not based on substantial evidence in the record.

Second, as another reason to give greater weight to Dr. Morse, the ALJ cited to his review of the entire longitudinal record and that his "conclusions were consistent with the bulk of the evidence in the record." (AR 112). At the hearing, Dr. Morse noted Dr. Crider assessed Plaintiff with primarily "discogenic disease of the neck and back." (AR 239). Dr. Morse also noted Dr. Crider's decision regarding Plaintiff's need for a cane. (AR 240). Dr. Morse testified there were inconsistencies in regard to the need for a cane in Dr. Crider's evaluation: "The RFC that he offered was basically a light RFC with some inconsistencies…to whether or not she needs a cane…." (*Id.*).

A review of Dr. Crider's report notes that Plaintiff did not use an assistive device for ambulation at the examination. However, Dr. Crider stated that "in his opinion" Plaintiff should use a cane for balance and support. (AR 631, 633). This is the opinion of the CE and nothing in Dr. Morse's testimony noted any contrary record evidence. Additionally, Plaintiff testified later in the hearing that there were days she used a cane to lean on. She uses it to lean on if she isn't sitting. (AR 264). Her use of a cane was also documented at a follow up appointment after her back surgery. One of her treating physicians, Dr. Phan, M.D. reported Plaintiff was "utilizing [a] cane to assist with ambulation." (AR 853).

Third, Dr. Morse testified that Dr. Crider did not assess Plaintiff with any postural limitations.[3] "The orthopedist did not limit her at all." (AR 241).

---

[3] Exertional/Postural limitations are the strength demands of a job (sitting, standing,

Dr. Morse testified that he would limit her to frequent ramps and stairs, frequent stooping, kneeling, crouching and crawling, and occasional climbing ladders, ropes and scaffolds. (*Id.*). A review of Dr. Crider's report shows that he did assess Plaintiff with the following postural limitations: "ramps and stairs without restriction;" "never climb ladders, ropes, scaffolds due to her present complaints;" and "stooping kneeling, crouching and crawling can never be done due to her present complaints." (AR 633-34).

Fourth, the ALJ gave more weight to Dr. Morse's opinion than to Dr. Crider's opinion because Dr. Morse had the benefit of reviewing the entire record, so was better able to determine Plaintiff's most recent abilities and disabilities.

The majority of the ALJ's reasons for giving primary weight to Dr. Morse are not substantiated by other evidence in the record. Dr. Morse's testimony appears to have been overly focused on Dr. Crider's consultative report rather than all the record evidence at that point in time. For example, Dr. Morse testified that Dr. Crider's report "was contradictory with respect to the postural limitations he assessed." (AR 239-40). However, despite citing numerous pages of Plaintiff's medical record that existed during the timeframe that Dr. Crider performed his examination, the ALJ still adopted Dr. Morse's RFC determination. A sampling of Plaintiff's individual progress notes provide relevant evidence in the record to support Plaintiff's allegation of error:

2014: In May 2014, Plaintiff had an x-ray of her lumbar spine showing multilevel degenerative disc disease but no acute disease, and an x-ray of her cervical spine showed severe degenerative disc disease. (AR 543, 545-46). In

---

walking, lifting, carrying, pushing, and pulling). *See* C.F.R. § 416.969a.

12

July 2014, treating physician Dr. Gin noted 5/5 strength and "muscle tone and strength normal and symmetric" in Plaintiff's upper and lower extremities. (AR 662-70). These records do not, however, support the conclusion that Plaintiff is able to climb ladders, ropes, or scaffolding, or stoop, kneel, crouch, or crawl. In September 2014, during an examination regarding seasonal allergies and hypertension, Dr. Judson Merritt, M.D. found Plaintiff's musculoskeletal range of motion normal. (AR 680-82). In November 2014, Plaintiff had an MRI of her lumbar spine, which showed multilevel degenerative changes of the lumbar spine, including a disc extrusion at L3-4 resulting in severe left neuroforaminal stenosis and impingement on the left L4 traversing nerve root. (AR 652-53). These records similarly do not support the conclusion that Plaintiff is able to climb ladders, ropes, or scaffolding, or stoop, kneel, crouch, or crawl.

    2015: Between January and May 2015, Plaintiff underwent epidural steroid injections in her spine. (AR 657-58, 882, 897). These records report that Plaintiff's history and physical findings are consistent with lumbar radiculopathy. (AR 882). The records do not indicate that Plaintiff would have been able to climb ladders, ropes, or scaffolding, or stoop, kneel, crouch, or crawl. In June 2015, Plaintiff began physical therapy, which she attended one to two times weekly. (AR 751-59, 902-06). Plaintiff's June 12, 2015 physical therapy records indicated Plaintiff's functional limitation include no vacuuming or sweeping. (AR 752). These records also indicate Plaintiff recently fell and "started using a cane because her left leg was giving her difficulty." (AR 751). Plaintiff reported her post-stretching pain as a 4/10 on June 19, 2015; a 5/10 on June 24, 2015; and an 8/10 on June 29, 2015. (AR 902-06). In July 2015, Plaintiff had an MRI of her lumbar spine, which showed multifactorial severe left neural foraminal narrowing at L3-4 and

13

18cv790-AJB-MDD

overall mild spinal canal stenosis. (AR 750-51). In August 2015, treating nurse practitioner Elizabeth Stimson examined Plaintiff and found Spurling's test negative, Trendelenburn sign negative, and normal alignment of thoracic spine. (AR 774-75). Plaintiff was tender to percussion in her cervical, thoracic, and lumbar spine. (*Id.*). In November 2015, Plaintiff underwent a partial laminectomy of the left L3-L4 with laminoforaminotomy and facetectomy. (AR 975-80). Taken together, these records do not support the conclusion that Plaintiff is able to climb ladders, ropes, or scaffolding, or stoop, kneel, crouch, or crawl.

2016: In January 2016, treating physician Vinko Zlomislic reported Plaintiff's motor strength was "5/5 in both upper and lower extremities." (AR 995). These records also indicate that Plaintiff was intermittently wearing a brace and that she was referred to physical therapy. (*Id.*). In April 2016, Plaintiff presented to Dr. Jan Weichsel, M.D., complaining of chronic pain. (AR 1036). Plaintiff reported experiencing daily pain causing her to stay in bed all day. (*Id.*). In April 2016, Plaintiff reported being in "max pain," and increased back pain since her previous appointment. (AR 1043). In April and May 2016, Plaintiff attended physical therapy. (AR 1043, 1048)

The ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Lester*, 81 F.3d at 830-31. As stated previously, an examining physician's opinion can alone constitute substantial evidence, where it rests on that physician's own independent examination of the plaintiff. *See Tonapetyan*, 242 F.3d at 1149. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala,* 9 F.3d 813, 818 n.

7 (9th Cir. 1993). Here, the ALJ's reliance on the opinion of a physician who neither treated nor examined Plaintiff over an examining physician and the reports of several treating physicians was not based on substantial evidence. The record evidence provides no support for Dr. Morse's opinion—or the ALJ's RFC conclusion—that Plaintiff is able to climb ladders, ropes, or scaffolds, or stoop, kneel, crouch, or crawl. As a result, the ALJ erred by according greater weight to the testifying medical expert, Dr. Morse, than to the consultative examining physician, Dr. Crider.

In a related argument, Plaintiff contends that she was eligible for a closed period of disability because her "lumbar condition met the durational requirement of the act independent of any other impairment…." (ECF 21-1, p. 7). Plaintiff asserts that "the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Crider's opinions for the period February 24, [2014] through November 2015 and the immediate post-surgical period." (*Id.*). According to Plaintiff "the ALJ should have adjudicated that separate capacity different from the post-surgical status." (*Id.*). Defendant argues "Plaintiff points to no pre-surgical evidence establishing functional limitations beyond her restrictive RFC as a matter of law." (ECF 22-1, p.6).

The Program Operations Manual System[4] (POMS) DI 25510.001(B)(1) states:

> A claimant may be entitled to a closed period of disability if the evidence shows he or she was disabled or blind for a continuous period of not less than 12 months but based on the evidence is no longer disabled…at the time of adjudication.
> To establish a closed period of disability the evidence must show the onset date, satisfaction of the duration requirement, and

---

[4] The POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits. https://secure.ssa.gov/poms.nsf/home!readform.

15

the date disability ceased.

Here the evidence presented is insufficient to find that Plaintiff was continuously unable to engage in substantial gainful activity because of a medically determinable impairment(s). Plaintiff alleged a disability commencing February 2014. (ECF 21-1, p. 7). Slightly less than a year later, Dr. Crider's examination concluded that Plaintiff was not disabled but had specific postural limitations that he set out in his written report. Plaintiff does not assert that Dr. Crider's overall opinion was error, in fact Plaintiff asserts "the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Crider's opinions for the period February 24 through November 2015 and the immediate post-surgical period." (*Id.*). Because Dr. Crider's opinion of non-disability is uncontested, the twelve month period required to support a closed period of disability is not satisfied. The ALJ did not fail to determine whether Plaintiff's pre-surgical impairment and post-surgical recuperative period satisfied the requirements for a closed period of disability.

**2. Adverse Credibility Determination**

As a result of the Court's inability to affirm the ALJ's reasons for rejecting the examining physician's opinions, it is unnecessary to reach the other disputed issue raised by Plaintiff. Because the Court is unable to affirm the ALJ's rejection of the examining physician's opinions, the Court is also unable to affirm the ALJ's RFC determination. Since the Court cannot affirm the RFC, it follows that it is futile for the Court to consider the other claim of error raised by Plaintiff.

**3. Remand for Further Administrative Proceedings**

A court has discretion to remand for further proceedings when an ALJ has

committed legal error in denying benefits. *Harman v. Apfel*, 211 F.3d 1172, 1176-77 (9th Cir. 2000). The record does not support the ALJ's decision to accord less weight to the opinion of Plaintiff's examining physician absent providing specific and legitimate reasons supported by substantial evidence. *See Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002).

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (citations and quotation marks omitted); *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir. 2004). On remand, the ALJ must evaluate the opinion of Plaintiff's examining physician in accordance with the applicable law.

Accordingly, the Court recommends the case be remanded for further administrative action consistent with the findings presented herein.

### III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** to the extent that the case be **REMANDED** for further proceedings. **IT IS FURTHER RECOMMENDED** that Defendant's Motion for Summary Judgment be **DENIED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the court and served on all parties no later than **January 17, 2020**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 24, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: January 2, 2020

Hon. Mitchell D. Dembin
United States Magistrate Judge